[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on for trial before the Court without intervention of a jury. The plaintiff, REPM, Inc. (REPM), through its principal officer, John Boucher, has brought suit against the defendant, P.C.M., Inc. (PCM), to collect for monies allegedly owed to the plaintiff by the defendant for work done on the construction of an addition to the Milford Hospital in Milford, Massachusetts, to house a Magnetic Resonance Imaging (MRI) unit.
PCM, through its Vice-President and Chief Operating Officer Russell Parry, was experienced in building MRI centers prior to this project both as a general contractor and as a construction manager. Mr. Parry personally had considerable experience in construction management and commercial building. He had an engineering degree and during his career had participated in the construction of hospitals, MRI centers, municipal waste-water treatment plants and other major construction projects. At this stage of his career, Mr. Parry described himself and his firm as a "NICHE" company specializing in MRI centers and waste-water treatment facilities.
The plaintiff John Boucher, the principal of REPM, a Rhode Island corporation based in Woonsocket, was primarily a builder of single-family homes with little commercial building experience. It was through its primary market, home construction, that Mr. Boucher became acquainted with Stephen Goyette because Mr. Boucher built a home for Mr. Goyette.
Mr. Goyette and Mr. Boucher got along well during this project. Mr. Goyette formed the opinion that Mr. Boucher and his company, REPM, were honest, reliable and accomplished contractors. In the words of Mr. Goyette, Mr. Boucher was "the kind of man you could work with" and he came to trust Mr. Boucher.
Mr. Goyette was an officer and employee of Alliance Imaging, Inc. (Alliance) of Wilmington, Massachusetts. His responsibilities for Alliance included overseeing the construction of the MRI center at Milford Hospital. It is undisputed that prior to any involvement in that project of REPM, that Mr. Goyette had engaged in discussions with Mr. Parry of PCM about the Milford Hospital MRI center. In an obvious effort to assist Mr. Boucher and REPM, Mr. Goyette essentially required Mr. Parry to include REPM in the construction of the MRI center or Mr. Parry's firm PCM would not receive the job.
Mr. Parry reluctantly agreed to include REPM with which he was not familiar up to that point on the MRI project. In initial discussions between Mr. Parry and Mr. Boucher, it became evident that even though REPM had virtually no experience in commercial or MRI center construction, that REPM did have expertise in site-work preparation, foundations, structural steel and wall, roofing, painting and related areas. These were areas in which Mr. Parry conceded he would probably have had to subcontract out in any event.
PCM would be responsible for mechanical and engineering aspects as well as electrical, rigging, sprinkler and permit fees. There would be some shared responsibilities to be undertaken by both PCM and REPM. Mr. Parry, with some reluctance, agreed to include REPM in the development of the MRI center.
Despite attempts by the defendant PCM to cast Mr. Goyette's insistence to include REPM in the construction scheme, in an illegal or at least immoral light, it appears that Mr. Goyette had the authority to select contractors for this project on behalf of Alliance and that he did so for no other reason; that he came to know and trust Mr. Boucher and felt he could work well with him. No other untoward reason or consideration was established by the evidence. From this point on, the testimony and perceptions of Mr. Parry and Mr. Boucher differ greatly and this difference forms the central issue in this case.
Mr. Parry testified that his relationship with Mr. Boucher and REPM was that of a partner or joint venturer with PCM in the project, sharing in all projects and both includable in all decisions. Mr. Boucher testified that he was a subcontractor for Mr. Parry and PCM and as such was working for a "set fee" for his areas of responsibility in the project. This is the issue that the Court will decide; that is, was the relationship between these parties one of partners or joint venturers, or as general and subcontractors, and was there a binding contract between these parties; and, if so, what are the terms of the agreement?
A contract is an agreement between two or more people or entities which creates an obligation to do or not do a certain thing. The elements of a contract are an offer, an acceptance of the offer, legal consideration, mutuality of agreement and mutuality of obligation. Smith v. Boyd, 553 A.2d 131 (R.I. 1989); Lamoureux v. Burrillville Racing Assn. 161 A.2d 213;91 R.I. 94 (R.I. 1960).
The defendant PCM, through Mr. Parry, has maintained that REPM with Mr. Boucher was a joint venturer with PCM and engaged in a partnering agreement. REPM through Mr. Boucher avers that he was a subcontractor of PCM, that each exercised responsibilities in this relationship according to their expertise in the construction arena and unequivocally that Mr. Parry was the lead participant in all dealings with Alliance and in its relationship with REPM.
The areas of responsibilities to be undertaken by each corporation were memorialized in a budget summary (Ex. 1) prepared by Mr. Parry. This budget summary was subsequently modified by two other budget summaries, both dated January 12, 2000, which modified some of the respective responsibilities of PCM and REPM. One of these summaries (Ex. 3) was appended to a contract entered into between PCM and Alliance; the other (Ex. 2) was sent to REPM and reasonably represented, with some later changes, the areas to be undertaken by REPM and PCM.
On January 12, 2000, PCM and Alliance entered into a standard form of a Design-Build Agreement which was designed to govern the construction of the Alliance MRI center. At no time was REPM a party to this contract.
Throughout the course of the trial, there were no assertions made that REPM did not complete its areas of responsibility or that the work was not done in a workmanlike manner. There is no dispute that the plaintiff REPM was paid on submitted invoices to PCM. Four payments were made by PCM as shown in plaintiff's Exhibits 5, 6, 7 and 8 which detailed the work done and payments made. Plaintiff's Exhibit 9 is a ledger maintained by the plaintiff REPM showing a balance of $25,605.00 due to plaintiff. These monies were paid to the plaintiff REPM by the defendant PCM without itemization documentation or in-depth explanation. Mr. Boucher testified that this method of payment is within the ordinary business relationships between general and subcontractors. Mr. Parry, on behalf of PCM, did not dispute the fair and reasonable value of the work undertaken by REPM on the project to be $125,605.00.
The Court has reviewed the testimony of all the witnesses in this case and the extensive exhibits offered by the parties. This case is largely a case of the credibility of the witnesses and the reasonable inferences which can be drawn from the facts that this Court deems to be true, as well as a review of the many documents which tend to outline the facts and circumstances of this case and which highlight the actions of the parties.
The Court is persuaded by a fair preponderance of the credible evidence that the relationship between REPM and PCM was that as REPM being a subcontractor to the general contractor PCM. In reaching this conclusion, the Court finds as a fact and as a conclusion of law the following:
That PCM was engaged solely in a contract for the construction of an MRI center at Milford Hospital with Alliance. This contract was entered into on January 12, 2002.
That REPM was not a party to that contract or subject to it.
That REPM through its course of dealings with PCM, as evidenced by the credible testimony of Mr. John Boucher, entered into an oral contract with PCM to do certain specific site preparation, foundation work and other related construction activities within its area of expertise.
That all work constructed by REPM was done in a workmanlike manner, on time and with no problems.
That REPM was paid by PCM pursuant to invoices in evidence amounting to $100,000.00.
That at no time at the submission of these invoices or upon the payment of the same did PCM or Mr. Parry raise any question or objection to the work done or for the requested payment; that, in fact, all requested payments were made by PCM.
That at all time throughout their business relationship on the Milford project did PCM, through Mr. Parry, conduct itself as the lead entity and general contractor for the entire project.
That PCM pursued its construction work as a "niche" company specializing in MRI center construction and waste-water treatment facilities.
The Court finds as a fact and as a matter of law that the references by Mr. Parry to "partnering" as the relationship between REPM and PCM did not refer to a partnership or joint venture in its legal sense, but merely meant a spirit of mutual cooperation in completing each corporations' areas of responsibility.
The Court finds further as a matter of fact and law that the plaintiff and defendant entered into an oral contract with defendant PCM being the general and the plaintiff REPM being the subcontractor to complete the subject project. That this agreement is evidenced by a fair preponderance of the evidence by the contract between Alliance and PCM (Ex. 1) and by the course of dealings between Mr. Parry and Mr. Boucher for their respective corporations.
The Court finds that at all times Mr. Parry was the generator of all budget summaries, construction responsibility lists, received and paid all invoices, not only for the plaintiff REPM, but for other subcontractors as well. That this course of conduct, despite Mr. Parry's testimony and protestations to the contrary, evidence by a fair preponderance of the evidence that he was in fact the general contractor for the project and not a partner or joint venturer with the plaintiff REPM.
The Court further finds that the agreement between PCM and REPM was to pay REPM a set price for the work done by REPM per the oral contract. The Court finds this as a matter of fact and law based on the credible testimony of Mr. Boucher, the uncontested payment of the invoices of REPM by PCM at the direction of Mr. Parry and from the reasonable inferences which can be drawn from the actions of the parties in this case.
There were other side issues raised by both plaintiff and defendant in this case which this Court considers to be collateral and not material to the central issues of the form and nature of the oral contract entered into by the parties.
The Court finds that by a fair preponderance of the credible evidence that there was a binding oral contract between the plaintiff and defendant regarding their respective roles as general contractor (defendant) and subcontractor (plaintiff), and that based on the course of dealings between the parties and the successful completion of the project that there was good and valuable consideration mutually of agreement and mutuality of obligation between PCM and REPM.
The Court further finds that the sum of $25,605.00 is due and owing to the plaintiff REPM based on the tangible evidence in this case and the monies already paid, as well as the credible testimony of Mr. Boucher.
The defendant's argument that an oral agreement between PCM and REPM to be partners or joint venturers is not established in fact or law and was not capable of being subsumed in the contract between Alliance and PCM. That contract, as this Court has already ruled, is plain and unambiguous on its face and REPM is clearly not a party to that contract. (Ex. A.)
The Court also rejects the defendant's argument and reasoning on the computation of damages in this case and finds as a fact that the defendant owes the plaintiff the sum of $25, 605.00 plus interest and costs at the statutory rate from October 4, 2000, to the present. The Court also finds that PCM is owed $13,500.00 from Alliance based on the uncontested testimony of Mr. Parry and the acknowledgment of the amount by Mr. Goyette of Alliance.
This Court is without jurisdiction to order Alliance to remit this amount to PCM, but urges the parties to conclude this issue on the proper submission of appropriate releases by REPM, Inc. and by P.C.M., Inc. to Alliance.
The parties will submit an order to the Court consistent with this Decision.